# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **HOLLIS BEVINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:09CV00076 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Joseph E. Wolfe, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Allyson Jozwik, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Hollis Bevins filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Bevins filed for benefits in April 2007, alleging that he became disabled on March 24, 2007, due to back problems, osteoarthritis, sleep apnea, gout, hypertension, and carpel tunnel syndrome. His claim was denied initially and upon reconsideration. Bevins received a hearing before an Administrative Law Judge ("ALJ"), during which Bevins, represented by counsel, and a vocational expert testified. The ALJ denied Bevins' claim and the Social Security Administration's Appeals Council ("Appeals Council") denied his Request for Reconsideration. Bevins then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Bevins was forty-seven years old when he filed for benefits, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). Bevins, who graduated from high school, has worked as a heavy equipment operator at a surface mining firm. Bevins has not worked since March 2007 when he quit his job because his "doctor told [him] to stop working." (R. at 128.) Bevins states he cannot work due to lower back and leg pain, obesity, and depression.

Since 2006, Bevins has undergone a series of medical tests to determine the medical ailments that he suffers. An October 2006 MRI revealed that Bevins had osteoarthritis in his left knee. A few months later, Bevins underwent carpel tunnel surgery on his right and left hands to relieve numbness and tingling. The outpatient surgery was performed successfully without any complications.

In addition to gout in his legs, Bevins has also suffered from lower back and leg pain. In December 2006, Bevins under went spinal X rays and a second MRI, which showed that he had normal alignment in his lumbar spine and a "chronic grade I compression fracture of the T-12 vertebrae" as well as a mild annular bulge at the T12-L1 vertebrae. (R. at 201.) The MRI also revealed a broad-based annular bulge at the L5-S1 vertebrae. During the following year, Bevins took prescribed medication as well as undergoing lumbar epidural steroid injections.

Bevins sought surgical assistance for his back problems, but physicians would not operate on Bevins because of the health risks associated with operating upon a 350-pound man. After physicians declined to operate on Bevins he was prescribed anti-depressants. In 2008, in an effort to loose weight so that back surgery could be performed, Bevins consulted with a physician about gastric bypass surgery. Bevins underwent a psychological examination as part of the consultation. The evaluation revealed that Bevins had a low energy level and that he was experiencing depressive

symptomology and anxiety. But the psychologist also noted that Bevins exhibited a bright affect during the consultation, that his speech was logical, coherent, and goal directed, and that Bevins did not display indicia of a psychotic thought disorder.

Bevins underwent gastric bypass surgery in December 2008 and reduced his weight by 140 pounds. After his surgery, he continued to seek medical assistance for his back and leg pain. Doctors at Highlands Neurosurgery prescribed a conservative therapy regime that included a back brace, abdominal and back exercises, and medication. The physicians at Highlands Neurosurgery did not state that Bevins needed surgery or that he was unable to work.

In 2007, prior to his gastric bypass surgery, a state agency psychologist reviewed Bevins' file and concluded that Bevins had no repeated episodes of decompensation and that his mental impairment was not severe. State agency physicians who reviewed Bevins' files prior to his gastric bypass surgery opined that he could stand or walk for at least two hours each day and could sit for about six hours each day.

Between 2006 and 2008, Bevins continued to regularly see his physician, Virginia Baluyot, M.D. Shortly after the state agency review was completed, Dr. Baluyot opined that Bevins could not walk, stand, or sit for more than 10-15 minutes at a time due to his back problems and his obesity. A few months before his gastric

bypass surgery, Dr. Baluyot altered her assessment of Bevins' residual functions. Dr. Baluyot concluded that Bevins could stand or walk for one hour in an eight-hour day, he could sit for two hours in an eight-hour day, and was limited in his ability to climb, stoop, kneel, push, and pull. It does not appear that Dr. Baluyot conducted further assessments after Bevins' gastric bypass surgery.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DBI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present

in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity ("RFC"), which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*, at 869.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.

It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The ALJ found that Bevins had not worked during the period of alleged disability and that he had severe impairments, but that these conditions did not meet the severity of a disability listed in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found that Bevins could not perform his past job as a heavy equipment operated, but determined that Bevins could work in sedentary occupations such as a telephone order clerk or a clerical worker.

Bevins argues that the ALJ committed two reversible errors. First, Bevins asserts that the ALJ did not properly weigh Dr. Baluyot's opinion. Second, Bevins argues that the ALJ failed to properly consider his mental impairments when determining Bevins' RFC. I disagree with both assertions. The record contains substantial evidence to support the ALJ's conclusions.

Bevins alleges that the ALJ should have afforded more weight to Dr. Baluyot's opinions because Dr. Baluyot was a treating physician and her conclusions were supported by "treatment history, objective medical testing, and referrals to specialists." (Pl.'s Br. 11.)

The ALJ has the exclusive authority to evaluate medical opinions in the record and, when assessing the weight given to a medical opinion, the ALJ should consider

whether the opinion is supported by laboratory findings and the record as a whole. 20 C.F.R. § 404.1527 (2010). The ALJ may give a treating physician's opinion greater weight than other evidence, but the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Contrary to Bevins' allegation, the ALJ did not completely reject Dr. Baluyot's opinions. Instead, the ALJ weighed Dr. Baluyot's conclusions and determined that they conflicted with the conclusions of two state agency physicians, clinical evidence, and Bevins' own testimony as to his ability to walk, sit for extended periods, and lift items. Ultimately, the ALJ disagreed with Dr. Baluyot's opinions and concluded that Bevins suffered from severe back pain and that this impairment limited his ability to sit and stand for extended periods.

Bevins' second argument is that the ALJ failed to consider evidence regarding his depression when determining Bevins' RFC. The record clearly refutes this allegation. The ALJ thoroughly discussed the findings of the state agency psychologist as well as the pscyhological examination and counseling sessions Bevins underwent at Frontier Health. Further, the ALJ weighed the findings of the counselor Bevins met with for a single therapy session in 2008. When reaching her conclusion as to what type of work Bevins could perform, the ALJ noted that Bevins

was limited to simple tasks due to "a moderate reduction in concentration" stemming from pain and medications, which included his anti-depressant medicine. Substantial evidence, therefore, supports the ALJ's conclusion that Bevins' depression was not disabling.

In his brief, Bevins discusses certain medical examinations received by Bevins after the ALJ issued her decision. The defendant argues I should reject this evidence because it is not new or material. Because the Appeals Council considered this evidence in reaching a decision not to grant review, I should also consider it in determining whether substantial evidence supports the ALJ's findings. *Wilkins v. Sec'y, Dep't of Health & Human Servs*., 953 F.2d 93, 96 (4th Cir. 1991).

The evidence compiled after the ALJ's decision includes medical records from Highlands Neurosurgery and Wellmont Health System during the period May 2009 through September 2009. The records indicate that after undergoing a third MRI, Bevins was diagnosed with multilevel degenerative disc and joint disease. The treating physician opined that Bevins had a full range of motion through the cervical spine, and that his hip examination was benign. The doctor recommended an epidural injection and physical therapy for Bevins. At later appointments, the physician continued to recommend conservative measures.

These additional records would not change the ALJ's finding because they demonstrate that Bevins could walk effectively, perform back and abdominal exercises, and had a normal range of motion for his cervical spine. The new records do not indicate that Bevins had any ailments that meet the criteria of any musculoskeletal disability listing. Thus, the supplemental evidence would not effect the ALJ's conclusion.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

ENTER: September 3, 2010

 /S/ JAMES P. JONES
United States District Judge